UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00230-FDW-SCR

| | |
|---|---|
| ANTHONY T BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JACQUELINE ANDERSON BROWN, *et al.*, )<br>)<br>Defendants. )<br>) | **ORDER** |

**THIS MATTER** is before the Court on Defendant Jacqueline Anderson Brown's Motion to Dismiss, (Doc. No. 5); Plaintiff Anthony T. Brown's Motion to Remand, (Doc. No. 7); and Plaintiff's Objections, (Doc. No. 18), to Magistrate Judge Susan C. Rodriguez's Memorandum and Recommendation ("M&R"), (Doc. No. 17). These matters have been fully briefed, (Doc. Nos. 6, 14, 16; Doc. Nos. 8, 12, 14; Doc. Nos. 18, 19), and are ripe for review.

For the reasons set forth below, Judge Rodriguez's M&R is **AFFIRMED** and **ADOPTED**, Plaintiff's Objections are **OVERRULED**, Plaintiff's Motion to Remand is **DENIED,** and Defendant's Motion to Dismiss is **GRANTED IN PART** and **REMANDED IN PART**.

## I.  BACKGROUND

On February 13, 2023, Plaintiff filed his Complaint against Defendant in the Union County Superior Court,[1] (Doc. No. 1-1), and on April 25, 2023, Defendant removed this case to the

---

[1] As an attorney who acknowledges that he has been licensed to practice law in the State of North Carolina since 1986, is responsible for "managing complex business and commercial litigation matters," and is currently serving as the President-Elect of the North Carolina State Bar, (Doc. No. 1-1, p. 7), Plaintiff is not entitled to the same leniency as a non-lawyer *pro se* party. See Diprete v. 950 Fairview Street, LLC, No. 15-0034, 2016 WL 6137000, at *4 n.4 (W.D. Va. Oct. 21, 2016), appeal dismissed, No. 16-2235, 2017 WL 2241808 (4th Cir. May 22, 2017) (collecting cases); see also Hillman v. Flagstar Bank, FSB, No. 8:20-cv-02486-PX, 2021 WL 3681155, at *1 n.1 (D. Md. Aug. 19, 2021) (citing Diprete, 2016 WL 6137000; Gordon v. Gutierrez, No. 6-861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) (collecting cases)).

1

Western District of North Carolina on the basis of diversity jurisdiction. (Doc. No. 1, p. 2). In his Complaint, Plaintiff asserts state law claims for: (1) declaratory judgment, (2) abuse of process, (3) defamation – libel *per se*, and (4) unfair and deceptive trade practices. (Doc. No. 1-1, p. 17–22). Neither party disputes the M&R's discussion of the Factual and Procedural History.[2] Accordingly, the Court hereby **ADOPTS** and incorporates by reference Section I of the M&R as if fully set forth herein. (Doc. No. 17, p. 1–2).

In short, Plaintiff and Defendant were married from 1988 to 2021. (Doc. No. 1-1, p. 6). Following their divorce, Plaintiff filed a civil complaint in state court against Defendant's brother and best friend, alleging Defendant's decision to legally separate from, and ultimately divorce, Plaintiff was the result of a conspiracy between Defendant, her brother, and her friend. (Id. at 9) ("Conspiracy Matter"). Though Defendant was "alleged to have been an equal co-conspirator," she was not joined as a party in the Conspiracy Matter. (Id.).

In pursuing his claims in the Conspiracy Matter for civil conspiracy, fraud, breach of fiduciary duty, invasion of privacy, unfair and deceptive trade practices, and accounting, Plaintiff served a subpoena on Sprint Communications Company Limited Partnership, ("Sprint,") for the production of Defendant's cell phone records—including, among other information, her call and text logs, IP connection logs, billing statements, subscriber information, and cell site information—from January 1, 2015, through January 31, 2022. (Doc. No. 1-1, p. 64–67). Thereafter, Defendant served her Objections to the subpoena on Sprint and Plaintiff arguing the subpoena was unreasonable, spiteful, and intended to harass her, ("Subpoena Objection"). (Doc. No. 1-1, p. 72). This objection serves as the sole basis of Plaintiff's claims against Defendant in

---

[2] In his Objections, Plaintiff states he "objects to the erroneously decided findings, conclusions, and recommendations of the M&R," (Doc. No. 18, p. 1), upon review of his contentions, it is clear that Plaintiff takes issue not with the M&R's factual or procedural summary, but rather with the M&R's legal statements, conclusions, and recommendation. Id. The Court discusses each of Plaintiff's contentions below.

2

the instant matter. Specifically, Plaintiff seeks declaratory judgment that Defendant did not have standing as a non-party to object to the Sprint Subpoena in the Conspiracy Matter. (Doc. No. 1-1, p. 18). He further alleges that Defendant's Subpoena Objection constituted an abuse of process, and her defamatory statements therein constituted libel *per se* and unfair and deceptive trade practices, all of which make Defendant liable for compensatory, punitive, and treble damages, as well as costs, attorney fees, and pre- and post-judgment interest. (Doc. No. 1-1, p. 17–23).

On May 16, 2023, Defendant filed her Motion to Dismiss and Memorandum in Support, (Doc. Nos. 5, 6), arguing dismissal is appropriate for two reasons. First, she asserts that pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court lacks subject matter jurisdiction over Plaintiff's First Claim for Relief for Declaratory Judgment. Second, she contends that pursuant to Rule 12(b)(6), Plaintiff failed to state a claim for relief for his Second, Third, and Fourth Claims for Abuse of Process, Defamation – Libel *Per Se*, and Unfair and Deceptive Trade Practices. Plaintiff filed his Memorandum of Law in Opposition to Defendant's Motion to Dismiss on June 13, and Defendant filed her Reply in Support of her Motion to Dismiss on June 27. (Doc. Nos. 14, 16).

On May 19, 2023, Plaintiff filed his Motion to Remand Pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1447(c) and Memorandum in Support, (Doc. Nos. 7, 8), alleging remand is necessary because Defendant's removal was improper. He argues Defendant failed to satisfy her burden of demonstrating both that complete diversity existed between the parties and the amount in controversy exceeded $75,000, and as a result, this Court lacks subject matter jurisdiction over this case. Defendant filed her Memorandum of Law in Opposition to Plaintiff's Motion to Remand on June 1, and Plaintiff filed his Reply Memorandum of Law in Support on June 6, 2023. (Doc. Nos. 12, 13).

On August 4, 2023, Magistrate Judge Rodriguez entered her M&R, (Doc. No. 17), regarding Plaintiff's Motion to Remand, (Doc. No. 7). Judge Rodriguez determined: (1) Plaintiff's request for at least $25,000 in compensatory damages, trebled, plus attorney's fees, is "greater than the $75,000 jurisdictional threshold"; (2) Plaintiff's post-removal stipulation that he would neither seek, nor accept, damages in excess of $75,000, (Doc. No. 8-1), did not defeat diversity jurisdiction; (3) Plaintiff is a citizen of North Carolina; and (4) despite Plaintiff's arguments otherwise, "there can be little doubt Defendant is a South Carolina citizen." (Doc. No. 17, p. 4–5). Accordingly, Judge Rodriguez concluded Defendant met her burden of demonstrating, by a preponderance of the evidence, that at the time of removal, complete diversity existed between the parties and the amount in controversy exceeded $75,000. Therefore, Judge Rodriguez recommended that this Court deny Plaintiff's Motion to Remand.

Accordingly, the Court will address each pending Motion in turn.

## II. STANDARDS OF REVIEW

### A. Memorandum and Recommendation

A district court may refer a nondispositive motion to a magistrate judge for a recommendation pursuant to Federal Rule of Civil Procedure 72(a). See FED. R. CIV. P. 72(a). Here, both parties agree this matter is nondispositive. A party may file written objections to a magistrate judge's M&R within fourteen days of being served with a copy of the M&R. 28 U.S.C § 636(b)(1). This Court is then tasked with reviewing objections to the M&R to determine whether the order "is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). A magistrate judge's factual findings are clearly erroneous when a court is "left with the definite and firm conviction that a mistake has been committed." TFWS, Inc. v. Franchot, 572 F.3d 186, 196 (4th Cir. 2009) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).

4

Although parties are permitted to file written objections to a magistrate judge's M&R, "'[a]ny written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)). Further, "a general objection . . . is not sufficient—'a party must object to the [magistrate's] finding or recommendation . . . with sufficient specificity so as reasonably to alert the district court to the *true ground for the objection*.'" United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)) (emphasis added); see also Jones v. Hamidullah, No. 2:05-2736, 2005 WL 3298966, at *3 (D.S.C. Dec. 5, 2005) (noting a petitioner's objections to a magistrate judge's report "on the whole are without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); see also United States v. Schronce, 727 F.2d 91, 93–94 (4th Cir. 1984).

**B.     Motion to Dismiss**

    *1.     Rule 12(b)(1) of the Federal Rules of Civil Procedure*

"The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Before a court can rule on any other issue, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal

quotation marks omitted). If there is doubt whether such jurisdiction exists, the court must "raise lack of subject-matter jurisdiction on its own motion," without regard to the parties' positions. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (noting federal courts are independently obligated to determine whether subject matter jurisdiction exists, "even when no party challenges it"); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884).

Thus, it is well-settled that lack of subject matter jurisdiction may be raised at any time by a litigant or the court *sua sponte*. See, e.g., id. at 384. Finally, "[n]o party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

Federal district courts retain original subject matter jurisdiction when, among other specific scenarios expressed in Title 28 of the United States Code, either (1) the complaint raises a federal question under 28 U.S.C. § 1331, or (2) the requirements for amount in controversy and diversity of citizenship are met under 28 U.S.C. § 1332. The party asserting jurisdiction bears the burden of proving subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

2. *Rule 12(b)(6) of the Federal Rules of Civil Procedure*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Iqbal, 556 U.S. at 678. To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the "reasonable inference" that the defendant is liable for the misconduct. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

**A.     The Memorandum and Recommendation for Plaintiff's Motion to Remand**

Plaintiff seeks *de novo* review of the Magistrate Judge's recommendation to deny his Motion for Remand. Plaintiff does not contest the Magistrate Judge's finding that Defendant is a citizen of South Carolina. Rather, Plaintiff objects specifically to the Magistrate Judge's determination that the amount in controversy requirement for federal diversity jurisdiction is satisfied. Under clear error review, the Magistrate Judge's recommendation is appropriate. For the reasons below, the Magistrate Judge's M&R is **AFFIRMED** and **ADOPTED**, Plaintiff's Objections are **OVERRULED**, and Plaintiff's Motion to Remand is **DENIED**.

   1. *Amount in Controversy*

Case 3:23-cv-00230-FDW-SCR   Document 20   Filed 09/29/23   Page 7 of 18

Plaintiff objects to the Magistrate Judge's determination that the amount in controversy requirement of $75,000 is satisfied for purposes of diversity jurisdiction. Specifically, Plaintiff argues the Magistrate Judge erred in her use of the "plain language of [Plaintiff's] Complaint" to calculate the amount in controversy. (Doc. No. 18, p. 3).

"Typically, an action in a state court can be removed to [federal court] only if it might have been brought in federal court originally." Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 379 (4th Cir. 2003) (internal quotation marks omitted) (alteration in original). The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction. Id. "If federal jurisdiction is doubtful, a remand [to state court] is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted).

Federal courts are courts of limited jurisdiction. When subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), the parties' citizenship must be completely diverse—such that "no plaintiff may be a citizen of the same state as any defendant"—and "the amount in controversy must exceed $75,000, exclusive of interest and costs." Elliott v. Am. States Ins. Co., 883 F.3d 384, 394 (4th Cir. 2018) (citing 28 U.S.C. § 1332(a)(1)). The "amount in controversy" is equivalent to the amount at stake in the litigation, meaning courts must consider the possible recovery based on plaintiffs' claims, not the probable recovery. See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala., 320 U.S. 238, 240–41 (1943) (suggesting the relevant figure for the amount in controversy requirement is the amount possibly recoverable based on a plaintiff's claims).

Generally, the amount claimed by the plaintiff in good faith controls the amount in controversy determination. See 28 U.S.C. § 1446(c)(2); see also JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) ("Courts generally determine the amount in controversy by reference

to the plaintiff's complaint."). "If a complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (internal quotation marks omitted) (alteration in original). In North Carolina, plaintiffs are prohibited from pleading an exact amount of claimed damages, and thus, a determination of the amount of controversy may not be possible from the face of the complaint. See N.C. GEN. STAT. § 1A-1. Under such circumstances, a court may consider "any evidence of the amount in controversy." Gwyn v. Wal-Mart Stores, Inc., 955 F. Supp. 44, 46 (M.D.N.C. 1996). However, if a court can determine the amount in controversy from the face of the complaint, the standard rule still applies.

As the Magistrate Judge determined, the plain reading of the Complaint makes clear the amount in controversy requirement is met. (Doc. No. 17, p. 3–4). While the Complaint does not include a specific amount in controversy as to comply with Rule 8(a)(2), it does list all damages sought. (Doc. No. 1-1, p. 22–23). Importantly, Plaintiff seeks "damages in an amount to be determined and *greater than* $25,000" and "[t]reble damages and attorney fees against Brown as allowed by North Carolina's Unfair and Deceptive Trade Practices Act." (Id.) (emphasis added) The Court agrees with the Magistrate Judge's finding that "[c]ompensatory damages of at least $25,000, then trebled plus attorney's fees are greater than the $75,000 jurisdictional threshold." (Doc. No. 17, p. 4). Even if Plaintiff recovers no attorney's fees due to his status as a *pro se* litigant,[3] the amount in controversy is met as the language of the Complaint clearly identifies damages sought "*greater than* $25,000" with the potential for treble damages. (Doc. No. 1-1, p. 22–23). Because the amount in controversy exceeds $75,000 on the basis of Plaintiff's complaint,

---

[3] As noted by the Court in footnote one (1), *supra*, Plaintiff is a *pro se* litigant who is also a lawyer. Nevertheless, the United States Supreme Court has held that *pro se* litigants, including those who are attorneys, are not entitled to recover attorney's fees. Kay v. Ehrler, 499 U.S. 432, 435–38 (1991).

9

the Court need not further consider whether Defendant has proven by a preponderance of the evidence the amount in controversy. See Francis, 709 F.3d at 367.

   2. *Plaintiff's Post-Removal Affidavit and Stipulation*

Plaintiff objects to the Magistrate Judge's determination that Plaintiff's post-removal stipulation does not defeat jurisdiction. (Doc. No. 18, p. 1). Plaintiff argues his post-removal stipulation, stating he would not seek damages in excess of $75,000, is binding and should be considered by the Court in assessing the amount in controversy. (Id.) However, Plaintiff's argument fails.

A party's stipulation can be enforceable if it is "a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery." McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 485 (S.D.W.Va. 2001); see also Green v. Caterpillar Inc., No. 2:14-CV-26, 2014 WL 4798705, at *3 (W.D.N.C. Sept. 26, 2014). Additionally, "[t]he stipulation should be filed contemporaneously with the complaint." McCoy, 147 F. Supp. 2d at 486. "The Fourth Circuit has adopted a general rule regarding the effect of stipulations decreasing the amount in controversy after a complaint has been filed or after a case has been removed when the amount in controversy is plainly stated in the complaint." Progressive W. Ins. Co. v. Morrissey, No. 2:21-1257, 2021 WL 3275883, at *2 (D.S.C. July 29, 2021) (citing JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010)). In such instances, "[c]ourts generally determine the amount in controversy by reference to the plaintiff's complaint." Morrissey, 2021 WL 3275883, at *2 (citing Frashier, 624 F.3d at 638). Meaning, post-removal limits or waivers on damages claims cannot defeat jurisdiction. See Cargo Logistics Servs. Corp. v. XTRA Lease, LLC, No. 3:12-CV-832, 2013 WL 789744, at *2 (W.D.N.C. March 4, 2013). Nevertheless, where the initial complaint does not specify an amount in controversy, a post-removal stipulation limiting damages may be considered

10

as a clarification of an ambiguous complaint. See Stanley v. Auto-Owners Ins. Co., 423 F. Supp. 3d 225, 229 (D.S.C. 2019) (collecting cases).

Here, Plaintiff filed his Complaint on February 13, 2023, with no mention of an intent to limit the damages sought to less than the amount in controversy requirement. Then, on May 19, 2023, Plaintiff filed a Motion to Remand and Memorandum in Support which included an affidavit from Plaintiff stipulating for the first time that he will not seek damages in excess of $75,000. (Doc. No. 8-1, p. 2–3). Thus, Plaintiff's stipulation is post-removal. Though the stipulation may be considered to clarify an ambiguous complaint, it is not necessary here. As discussed above, the plain reading of the Complaint makes clear the amount in controversy requirement is met. (Doc. No. 17, p. 3–4). Plaintiff's Motion to Remand must be **DENIED**.

**B.     Defendant's Motion to Dismiss**

The Court now turns to Defendant's Motion to Dismiss, (Doc. No. 5), wherein Defendant seeks dismissal of Plaintiff's Complaint pursuant to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, the Court will address each ground for dismissal in turn below.

   *1.  Lack of Subject Matter Jurisdiction*

The first claim for relief in Plaintiff's Complaint seeks a declaratory judgment "to declare rights, status, and other legal relations of Plaintiff and Brown at issue herein." (Doc. No. 1-1, p. 18). Defendant moves for dismissal of the claim, arguing this Court lacks subject matter jurisdiction as a result of Plaintiff's failure to meet the requirements set out in the federal Declaratory Judgment Act ("DJA"). 28 U.S.C. § 2201.

Pursuant to the DJA, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998). For a federal court to properly exercise jurisdiction in a declaratory judgment proceeding, three elements must be met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possess an independent basis for jurisdiction; and (3) the court does not abuse its discretion in its exercise of jurisdiction. Volvo Const. Equipment N.A., Inc. v. CLM Equipment Co., 386 F.3d 581, 592 (4th Cir. 2004). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." Witton v. Seven Falls, Co., 515 U.S. 277, 288 (1995). Courts have used this discretion to decline to address declaratory judgment claims that are duplicative of other claims in the complaint. See e.g., Laera v. Rosenbaum, No. 3:15-CV-371, 2016 WL 6775638, at *5 (W.D.N.C. Nov. 15, 2016); Federal Nat'l Mortg. Ass'n v. K.O. Realty, Inc., No. 3:13-CV-2781, 2014 WL 3900619, at *8 (N.D. Tex. Aug. 8, 2014); Takeda Pharm. Co. v. Mylan Inc., 62 F. Supp. 3d 1115, 1122 (N.D. Cal. 2014).

Here, the basis for Plaintiff's request for declaratory judgment mirrors the other allegations in the Complaint. The legal questions raised by the declaratory judgment are, thus, imbedded within Plaintiff's second, third, and fourth claims for relief (abuse of process, libel *per se*, and unfair and deceptive trade practices). Namely, a declaration as to Defendant's legal standing to object in the Brown v. Anderson matter would inherently address legal elements of Plaintiff's remaining claims. Therefore, Plaintiff's request for declaratory judgment is duplicative and serves no useful purpose. For this reason, the Court exercises its discretion to decline to address Plaintiff's declaratory judgment claim. Accordingly, Plaintiff's claim seeking a declaratory judgment is

**DISMISSED WITHOUT PREJUDICE**. Defendant's Motion to Dismiss as to Plaintiff's claim for declaratory judgment is **DENIED** as moot.

   2. *Failure to State a Claim*

Plaintiff's Complaint seeks damages for Defendant's alleged (1) abuse of process, (2) libel *per se*, and (3) unfair and deceptive trade practices. Defendant moves to dismiss each alleged claim arguing that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, the Court begins its analysis below with Plaintiff's libel *per se* claim.

   i. Libel *Per Se*

To recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which was published to a third party. Craven v. Cope, 656 S.E.2d 729, 732 (N.C. Ct. App. 2008). Written defamation constitutes libel *per se* when (1) the statement is "subject to only one interpretation" "when considered alone without innuendo, colloquium or explanatory circumstances" by "ordinary people" and (2) that interpretation (i) "charges that a person has committed an infamous crime"; (ii) "charges a person with having an infectious disease"; (iii) "tends to impeach a person in that person's trade or profession"; or (iv) "otherwise tends to subject one to ridicule, contempt or disgrace." Renwick v. News & Observer Publ'g Co., 312 S.E.2d 405, 409 (N.C. 1984). "In North Carolina, [w]hether a publication is libelous *per se* is a question of law for the court." Eshelman v. Puma Biotechnology, Inc., 2 F.4th 276, 281 (4th Cir. 2021) (quoting Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 899 (N.C. Ct. App. 2002)).

Additionally, it is well established that defamatory statements made during a judicial proceeding are absolutely privileged and cannot support a civil action for defamation. Scott v. Statesville Plywood & Veneer Co., 81 S.E.2d 146, 148 (N.C. 1954); Jarman v. Offutt, 80 S.E.2d

13

248, 251 (N.C. 1954). The absolute privilege applies where (1) the statements are made during the course of a judicial proceeding, (2) they are sufficiently relevant to the judicial proceeding, and (3) the claim is based upon the allegation that the statement at issue is false, fraudulent, or misleading. N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, LLC, No. 1:16CV1174, 2019 WL 4739539, at *4 (M.D.N.C. Sept. 27, 2019). "If [the statements are] so related to the subject matter of the controversy that it may become the subject of inquiry in the course of the trial, the rule of absolute privilege is controlling." Scott, 81 S.E.2d at 149. If, however, the statements are "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety", the privilege will not be applied. Id. North Carolina courts have defined the phrase "judicial proceeding" broadly. Harris v. NCNB Nat. Bank of N.C, 355 S.E.2d 838, 842 (N.C. Ct. App. 1987).

Here, Plaintiff's libel *per se* claim stems from Defendant's objections to the Sprint Subpoena which Defendant submitted to Sprint and the parties in Brown v. Anderson—a judicial proceeding.[4] Defendant's subpoena objections specifically questioned Plaintiff's intentions for both filing the Brown v. Anderson lawsuit and Plaintiff's intentions for requesting Defendant's phone records. (Doc. No. 1-1, p. 72–73). Plaintiff has plainly alleged that Defendant's statements are false. (Doc. No. 1-1, p. 21). Furthermore, the statements are sufficiently relevant to the Brown v. Anderson proceeding. Plaintiff's Sprint Subpoena sought a wide variety of records from

---

[4] Plaintiff incorrectly cites Topping v. Myers, 270 N.C. App. 613 (2020) and Bouvier v. Porter, 279 N.C. App. 528 (2021) for the proposition that "[p]rivilege is afforded to attorneys participating in and *serving as counsel of record* in the judicial proceeding at issue, not to non-parties thereto." (Doc. No. 14, p. 13) (emphasis added). Rather, the North Carolina Court of Appeals in Topping chose not to extend privilege to "statements made by counsel during an out-of-court press conference" because "[a] press conference to the media is not communication between the parties, their counsel, nor with or concerning the court." Topping, 270 N.C. App. at 624. As for Bouvier, the allegedly defamatory statements were prepared by the Law Firm Defendants without consultation with or for a client. Bouvier, 279 N.C. App. at 546–47. Then, the Law firm Defendants recruited individual protestors who were left to "initiate and prosecute the actual protest proceedings pro se." Id. at 547. This is distinct from the manner in which Defendant's objections were made and disseminated, making Defendant more akin to Porter who the Court of Appeals held was protected by the privilege.

14

Defendant's cellphone use over a seven-year period including: all billing statements; all incoming and outgoing call logs; all incoming and outgoing text logs; all IP connection logs; all call detail records/direct connect detail; all cell site information; and all subscriber information. (Doc. No. 1-1, p. 67). While a party generally lacks standing to challenge a subpoena issued to a third party, a movant will have standing to object to such subpoenas when a privilege, proprietary interest, or personal interest exists in the subpoenaed matter. See United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005). Unfortunate for Defendant, there is no established privacy interest in "telephone bills, invoices, incoming and outgoing call records, [and] incoming and outgoing text messages." Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc., No. 09-1202-PWG, 2011 WL 3651821, at *2–4 (D. Md. Aug. 17, 2011). Though, it remains unclear as to what extent Defendant may rightfully have a privacy interest in her cell site information. Regardless, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D). Therefore, irrespective of the merits of Defendant's objections, Defendant raised valid personal privacy concerns related to the potential harassment and oppression which probing and disseminating seven years of cellphone records may cause. Ultimately, the scope of Defendant's cellphone records is relevant to the underlying controversy as the discovery sought by Plaintiff was central to the alleged claims of conspiracy and fraud. Thus, the Defendant's objections meet the requirements for absolute privilege. Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's libel *per se* claim.

      ii.   <u>Unfair and Deceptive Trade Practices</u>

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") is a broad statute with expansive language encompassing various types of unfair trade or business practices. N.C. GEN. STAT. § 75–1.1; see also Drouillard v. Keister Williams Newspaper Servs., Inc., 423 S.E.2d 324, 326–27 (N.C. Ct. App. 1992) (rejecting the notion that, under the UDTPA, conduct must be specifically prohibited by statute). Ultimately, a determination of whether a practice is unfair or deceptive requires consideration of the facts on a case-by-case basis.

To withstand a motion to dismiss on a claim for UDTP under North Carolina law, a plaintiff must plausibly allege three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant. See Ellis v. Northern Star Co., 388 S.E.2d 127, 131 (N.C. 1990). In a business setting, libel *per se* "is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75–1.1, which will justify an award of damages under N.C.G.S. § 75–16 for injuries proximately caused." Id. at 130–31.

Here, Plaintiff's UDTPA claim is entirely based on the premise that Defendant's objections constitute libel *per se*. (Doc. No. 1-1, p. 18). As the Court explained above, Defendant's objections were privileged and cannot be the basis for a civil claim of libel *per se*. By extension, Defendant's privileged conduct cannot support a UDTPA claim. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's UDTPA claim.

### iii. Discretion over Retaining Jurisdiction

In the absence of Plaintiff's claims dismissed by the Court—specifically, unfair and deceptive trade practices—the amount in controversy is clearly insufficient to support federal diversity jurisdiction. As such, the Court declines in the exercise of its discretion to retain jurisdiction over this case.

"[I]f some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." Shanaghan v. Cahill, 58 F.3d 106, 112 (1995). The Fourth Circuit in Shanaghan v. Cahill discussed when it may be appropriate to dismiss state law claims when the federal basis for an action, including the amount in controversy requirement, drops away. Id. at 109–12. As when a court decides whether to exercise supplemental jurisdiction after the federal questions in a case disappear, the court may consider: "(1) the convenience and fairness to both parties; (2) judicial economy; (3) whether the amount claimed in the complaint was made in good faith or whether plaintiff was "consciously relying on flimsy grounds" to get into federal court; (4) whether plaintiff would be prejudiced from dismissal of the action, such as the existence of a statute of limitations bar; (5) the amount of time and energy already expanded; (6) existence of an issue of state law best resolved in state court; and (7) other case-by-case considerations." See id. at 112–13; see also Piedmont Roofing Services, LLC v. Nationwide Mutual Ins. Co., No. 5:22-CV-00145, 2023 WL 1466613, at *2 (W.D.N.C. Feb. 2, 2023).

In consideration of these factors, the Court will exercise its discretion to remand the case to state court. Plaintiff originally brought this action in state court and in fairness should be permitted its choice of forum, especially in light of the dismissal of potential treble damages. The good faith of Plaintiff has not been challenged as related to the amount in controversy claimed in the complaint. Additionally, there is no added convenience to the parties by litigating in federal court. Plaintiff's claim of abuse of process, governed by North Carolina state law, is better resolved at the state court level. Finally, the parties' time and efforts will not be wasted by remanding the case. Any unresolved claims from the motions will remain fully briefed for a determination by a

state superior court judge. Accordingly, the Court declines to retain jurisdiction over this matter and **REMANDS** the remaining merits of Defendant's motion to dismiss for the North Carolina state courts to decide.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the foregoing reasons, Magistrate Judge Rodriguez's M&R, (Doc. No. 17), is **AFFIRMED** and **ADOPTED**, Plaintiff's Objections, (Doc. No. 18), are **OVERRULED**, and Plaintiff's Motion for Remand, (Doc. No. 7), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 5), is **GRANTED IN PART** to the extent that Plaintiff's claims for libel *per se* and unfair and deceptive trade practices are **DISMISSED**, and **REMANDED IN PART** to the extent that this Court declines jurisdiction over Plaintiff's abuse of process claim.

**IT IS FURTHER ORDERED** that Plaintiff's Declaratory Judgment Claim, (Doc. No. 1-1, p. 13), is **DISMISSED** as moot.

**IT IS SO ORDERED.**

Signed: September 27, 2023

Frank D. Whitney
United States District Judge

18

Case 3:23-cv-00230-FDW-SCR   Document 20   Filed 09/29/23   Page 18 of 18